UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAMESETTA MCFARLAND-LAWSON,

          Plaintiff,

    v.                                            Case No. 16-CV-685

MARCIA FUDGE,
SECRETARY OF HOUSING AND
URBAN DEVELOPMENT,

          Defendant.

## ORDER

From 2002 through 2014 plaintiff Jamesetta McFarland-Lawson worked at the United States Department of Housing and Urban Development (HUD) in the Milwaukee Fair Housing and Equal Opportunity office. (*See* ECF No. 1.) In her time at the agency she filed numerous complaints against it, each alleging employment discrimination. *See McFarland-Lawson v. Ammon*, 847 F. App'x 350, 352 (7th Cir. 2021). She filed this action in June 2016, again alleging employment discrimination against HUD based on her disability, race, gender, and veteran status. (*See* ECF No. 1.) When her complaint was dismissed (*see* ECF No. 124), she appealed (*see* ECF No. 126).

The matter is now before this court on remand. (ECF No. 160); *see also McFarland-Lawson*, 847 F. App'x at 351. Pending is the Secretary's motion for summary judgment. (ECF No. 170.) That motion has been fully briefed and is ready for resolution. All parties have consented to the full jurisdiction of this court. (ECF Nos. 157, 158.)

**1. Background**

The following facts are taken from the Secretary's Proposed Findings of Fact (ECF No. 172) because McFarland-Lawson's Opposition to the Secretary's Proposed Findings of Fact (ECF No. 197) and her own Proposed Findings of Fact (ECF No. 198) lack the support required by the applicable procedural rules. Civil Local Rule 56(2)(B)(i) requires that a nonmoving party's response to the moving party's statement of facts contain "specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon." *See* Civ. L. R. 56(2)(B). Likewise, Federal Rule of Civil Procedure 56(c)(1) requires "a party asserting that a fact … is genuinely disputed support the assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).

McFarland-Lawson largely fails to support the assertions she makes both in her Opposition to the Secretary's Proposed Findings of Fact and in her Proposed Findings of Fact. For example, in her Opposition to the Secretary's Proposed Findings of Fact, she

repeatedly asserts that she "is not familiar with [the] grievance process" but does not support that assertion by citing to the record or to a declaration. (*See, e.g.*, ECF No. 197, ¶ 5.) The few times she does cite to the record, her citations are inaccurate and fail to show that the Secretary's proposed facts are genuinely disputed. (*See, e.g.*, *id.*, ¶ 2.) Even as a pro se litigant, McFarland-Lawson is required to follow procedural rules. *See McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 787 (7th Cir. 2019). She had notice of what those rules are: the Secretary included them in her motion as required by Civil Local Rule 56(a)(1)(A). (*See* ECF No. 170 (citing Civ. L. R. 56(a)(1)(A)).)

In a few instances where necessary to explain what happened here the court has taken facts from elsewhere in the record. *See* Fed. R. Civ. Pro. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2721 Materials Considered on the Motion—In General (4th ed. 2022) (The court "has discretion to consider other materials in the record when making its [summary judgment] determination.").

With that said, McFarland-Lawson filed her first Equal Employment Opportunity (EEO) administrative complaint against HUD in March 2012 after HUD had "partially denied her request for numerous workplace accommodations for her disabilities." (ECF No. 88-1 at 3); *see also McFarland-Lawson*, 847 F. App'x at 352. During the investigation of that complaint, in August 2012 McFarland-Lawson told an Equal

Employment Opportunity Commission (EEOC) investigator that she "now see[s] why people kill people" and that she thought about "being the first Black woman to shoot up a whole bunch of white people, however, just the ones that do something to me, not the ones that don't." (ECF No. 172, ¶ 7; ECF No. 88-2 at 2.) Consequently, she was placed on paid administrative leave so that HUD could determine whether she posed a threat to her herself or her coworkers. (ECF No. 172, ¶ 8.) She was moved to unpaid indefinite enforced leave when she refused to sign a medical release form to determine whether she could return to work without presenting a threat to the health and safety of herself or her co-workers. (*Id.*, ¶¶ 9-11.) She continued to refuse for "approximately eight [] months." (ECF No. 88-7 at 4.)

On February 4, 2013, President Deborah Slakes of American Federation of Government Employees (the Union) Local 2144 filed a union grievance concerning the "continued enforced leave required for employee [Jamesetta McFarland-Lawson] after medical examination and adjudication of threat incident by third party." (ECF No. 172, ¶ 12; *see also* ECF No. 88-2.) The grievance claimed that McFarland-Lawson had "been harmed by having to pay for therapist/physicians appointments in compliance with a required HUD management medical examination and she has been harmed by not being allowed to return to work and resume earning money." (ECF No. 88-2 at 3.) On March 25, 2013, HUD denied the grievance. (*See* ECF No. 172, ¶ 20; *see also* ECF No. 88-4.) HUD informed Slakes that, if the Union was not satisfied with the decision, it could

refer the grievance to arbitration. (ECF No. 172, ¶ 23.) Slakes and the Union elected not to pursue arbitration. (*Id.*, ¶ 26.)

McFarland-Lawson remained on unpaid indefinite enforced leave until June 12, 2013, when she was approved to return to work after having finally submitted to an independent mental health examination (ECF No. 88-5); *see also McFarland-Lawson*, 847 F. App'x at 353. But she did not show up to work until June 17, having been in the custody of the Milwaukee County Sheriff for an unrelated incident. (ECF No. 88-6 at 6-7); *see also McFarland-Lawson*, 847 F. App'x at 353. In that incident, a Milwaukee County Circuit Court had granted a temporary restraining order and injunction against McFarland-Lawson and ordered her "to cease or avoid harassment of the petitioner, avoid the residence occupied by petitioner, avoid contact that harasses petitioner, and avoid damaging petitioner's property." (ECF No. 88-6 at 7.) The court had also ordered her to surrender her firearms—"a 12 gauge shotgun and a Dillinger." (*Id.*) She was arrested after failing to appear before the court to do so. (*Id.*)

Through its investigation of her arrest, HUD discovered that McFarland-Lawson had failed to disclose owning either "a 12 gauge shotgun or a Dilligner" during her May 2013 mental health examination—after which she had been cleared to return to work. (ECF No. 88-6 at 7.) HUD again placed her on paid leave

> to ensure the safety of the Milwaukee staff while [it] consulted with [Federal Occupational Health] doctors over this new information concerning [her] failure to disclose truthfully all firearms in [her] possession and the failure to disclose other relevant information,

5

specifically that a court found that [she] posed a safety risk to a third party.

(*Id.* at 8.)

A month later McFarland-Lawson filed a second EEO administrative complaint against HUD. (ECF No. 172, ¶ 27.) In her second EEO complaint McFarland-Lawson alleged that

> HUD [had] subjected her to discrimination based on disability, race, and sex, and reprisal when (1) she was told in April 2013 that she must authorize an independent medical examination or medical record release, thus delaying a determination on whether she could return to work; and (2) HUD informed her in June 2013 that she was again being placed on leave.

(ECF No. 88-24); *see also McFarland-Lawson*, 847 F. App'x at 353.

In March 2016, over two and half years later, HUD issued a final agency decision on McFarland-Lawson's second complaint, finding no discrimination or harassment. (ECF No. 88-19); *see also McFarland-Lawson*, 847 F. App'x at 353. In June 2016 McFarland-Lawson filed this lawsuit challenging that decision. (*See* ECF No. 1.)

The Secretary moved to dismiss McFarland-Lawson's complaint, arguing that she "could pursue only the claims raised in her second EEOC charge but that those had either been previously grieved, fully adjudicated in her first EEOC charge, or settled in her removal appeal; otherwise, they had not been administratively exhausted." (ECF No. 86); *see also McFarland-Lawson*, 847 F. App'x at 353–54. Magistrate Judge David J. Jones, presiding with the consent of the parties, agreed, orally granting the Secretary's

motion to dismiss during a March 20, 2019, hearing. (ECF Nos. 117, 136); *see also McFarland-Lawson*, 847 F. App'x at 354. He explained that

> any claims brought in the first EEOC charge were not properly before the court. He then determined that any claim relating to McFarland-Lawson's unpaid indefinite enforced leave was foreclosed by the union grievance, which was not fully exhausted (because there was no arbitration after it was denied). The remainder of McFarland-Lawson's allegations, the magistrate judge concluded, were either not part of her second EEOC charge or were resolved [earlier].

(ECF No. 124); *see also McFarland-Lawson*, 847 F. App'x at 354. He issued a written order memorializing his decision on July 17, 2019. (ECF No. 124); *see also McFarland-Lawson*, 847 F. App'x at 354. McFarland-Lawson appealed. (*See* ECF No. 126.)

On appeal McFarland-Lawson argued that the court "erred in concluding that she had filed, but not exhausted, a union grievance about claims in her federal complaint, and thus also erred in concluding it lacked jurisdiction over the claims in the grievance." *McFarland-Lawson*, 847 F. App'x at 354. The Court of Appeals concluded that the district court

> went far beyond the pleadings in finding dismissal appropriate. Specifically, [it] concluded that McFarland-Lawson first challenged the delays in her return from unpaid indefinite enforced leave with a union grievance, foreclosing her ability to pursue related claims in her second EEOC charge, and to pursue that claim in the district court, because the union never exhausted the administrative process.

*Id.* at 355. The Court of Appeals continued:

> Because the district court erred by treating failure to exhaust as a jurisdictional issue and in resolving a factual dispute about whether McFarland-Lawson filed (but did not exhaust) a grievance over delays in

> her ability to return from unpaid indefinite enforced leave, we VACATE that portion of the dismissal and REMAND for further proceedings.

*Id.* at 356. It instructed the court to limit its review to

> the second claim listed on the first page of the March 10, 2016, final agency decision denying McFarland-Lawson's second EEOC charge (alleging discrimination when "On April 4, 2013, she learned that she needed to authorize an extension of an independent medical examination and review of her medical files, thus delaying a determination of when she would be allowed to return to work.").

*Id.* Upon the retirement of Judge Jones, on remand the matter was reassigned to this court.

In her motion for summary judgment the Secretary argues that "McFarland-Lawson's claims should be dismissed in their entirety because she failed to exhaust her administrative remedies when she affirmatively participated in the union grievance procedure." (ECF No. 171 at 3.) McFarland-Lawson disagrees, maintaining that she did not participate in the union grievance procedure. (*See generally* ECF No. 194.)

**2. Applicable Law**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome of the suit" and a dispute is "genuine" only if a reasonable factfinder could return a verdict for the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). In resolving a motion for summary judgment the court is to "construe all

evidence and draw all reasonable inferences from the evidence in" favor of the non-movant. *E.Y. v. United States*, 758 F.3d 861, 863 (7th Cir. 2014) (citing *Gil v. Reed*, 535 F.3d 551, 556 (7th Cir. 2008); *Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001)). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and [in] opposition to the motion for summary judgment." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016).

**3. Analysis**

The Civil Service Reform Act of 1978 (CSRA) provides that a federal employee "affected by a prohibited personnel practice under section 2302(b)(1) of this title which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, but not both." 5 U.S.C. § 7121(d). "Prohibited personnel practices" include discrimination on the basis of race, sex, and "handicapping condition." 5 U.S.C. § 2302(b)(1).

As a member of the Union McFarland-Lawson was covered by the collective bargaining agreement between HUD and the Union. (*See* ECF No. 88-13.) That agreement sets forth a "negotiated grievance procedure" that covers allegations of discrimination on the basis of race, sex, and "handicapping condition." (*See id.* at 12-13.) Therefore, under the CSRA, McFarland-Lawson could raise her discrimination claims under the negotiated grievance procedure or under a statutory procedure (like Title VII, for example) but not both. In other words, if McFarland-Lawson chose to grieve her

claims, any EEO complaint she later filed "on the same matter" would have to be dismissed. *See* 29 C.F.R. § 1614.301.

The Secretary argues that McFarland-Lawson chose "to grieve the matter of being placed on indefinite enforced leave." (ECF No. 171 at 2.) The Secretary maintains that, "[a]lthough the Union was the entity that filed the grievance, McFarland-Lawson elected to pursue that remedy as she was aware the Union planned to file the grievance, and actively assisted her union officers in preparing the grievance." (*Id.* at 7.) McFarland-Lawson disagrees, responding that she "did not elect or actively participate[] in the grievance." (ECF No. 194 at 5.)

As McFarland-Lawson notes, "the mere fact that someone initiated a union grievance does not automatically equate to an election of the grievance procedure." (ECF No. 194 at 6 (citing *Kendrick v. Dep't of Veterans Affs.*, No. CH-0752-96-0564-I-1, 1997 WL 189849 (M.S.P.B. Mar. 31, 1997)).) Indeed, "[i]f it is shown that the union filed [a grievance] without the explicit or implicit authorization of the employee, then the employee has not made an election of the grievance procedure." *Kendrick*, 1997 WL 189849, at *2. However, an employee may give her "implicit authorization" through her failure to "affirmatively disavow" the grievance that was being pursued on her behalf. *Baldwin v. Merit Sys. Prot. Bd.*, 806 F. App'x 992, 995 (Fed. Cir. 2020) (citing *Kendrick*, 1997 WL 189849).

Slakes prepared and filed the February 2013 union grievance on McFarland-Lawson's behalf. (ECF No. 172, ¶ 12; *see also* ECF No. 88-2 at 2.) She testified that McFarland-Lawson was aware that she was filing the grievance on her behalf, noting that she met with McFarland-Lawson "on multiple occasions" to discuss the grievance procedure. (ECF No. 172, ¶¶ 13-14.) She testified that McFarland-Lawson also met directly "with HUD management regarding the grievance." (*Id.*, ¶18.) She testified that McFarland-Lawson sent her (Slakes) documents "to support the grievance" (*Id.*, ¶ 16), and that McFarland-Lawson was present at discussions about the union grievance (*Id.*, ¶ 22). She even testified that McFarland-Lawson personally provided HUD additional time to respond to the grievance. (*Id.*, ¶ 19.)

Slakes's testimony shows that McFarland-Lawson was aware of and did not "affirmatively disavow" the union grievance filed on her behalf. McFarland-Lawson did not produce any evidence to the contrary. (*See* ECF No. 197, ¶ 17); *cf.* S*chacht v. Wisconsin Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999). Therefore, the court concludes that she at least implicitly authorized the filing of the union grievance.

Nonetheless, McFarland-Lawson maintains that the claims pursued in the union grievance were different from the claims that she pursued in her second EEO complaint. (ECF No. 194 at 2, 5.) Specifically, she argues that the grievance was about "policies" and addressed "management's conduct about other employees who had similar situations [to hers] and they were not handled the same way" (*id.* at 3-4), while her EEO

complaint was "based on being discriminated against because she is disabled, black, and a female." (*Id.* at 4).

As explained above, the CSRA prevents a federal employee "from raising the same 'matter' in both a union grievance and an EEO complaint." *Carter v. Carson*, 241 F. Supp. 3d 191, 199 (D.D.C. 2017), *aff'd*, 715 F. App'x 16 (D.C. Cir. 2018). Whether a grievance and an EEO complaint raise the same matter is a fact-based inquiry: a grievance and a complaint may raise the same matter if they are based on the same underlying employment action or if they raise the same topics. *Carter*, 241 F. Supp. 3d at 199 (citing *Guerra v. Cuomo*, 176 F.3d 547, 550 (D.C. Cir. 1999)); *Rosell v. Wood*, 357 F. Supp. 2d 123, 129–30 (D.D.C. 2004) (citing *Guerra*, 176 F.3d at 550). Examples of an "underlying employment action" include an employer's alleged failure to provide an employee with adequate training, *see Grant-Brooks v. Mnuchin*, No. 19-CV-1654, 2022 WL 990702 (D.D.C. Mar. 31, 2022), an employer's decision to put an employee on a performance improvement plan, *see Bobeck v. Dep't of Health & Hum. Servs. - Soc. Sec. Admin.*, No. 95 C 4778, 1996 WL 89111 (N.D. Ill. Feb. 27, 1996), and an employer's decision to remove an employee. *See Carter*, 241 F. Supp. 3d at 194.

The employment action underlying the grievance filed on McFarland-Lawson's behalf was HUD's decision to have McFarland-Lawson remain on enforced leave until she either signed a medical release form or submitted to an independent medical evaluation. Indeed, the grievance's subject line reads "continued enforced leave

required for employee Jamesetta McFarland after medical examination and adjudication of threat incident by third party." (ECF No. 88-2 at 2.) Likewise, in the decision denying her grievance HUD explained that McFarland-Lawson had "not provided the medical release form necessary for the FOH doctors to talk to her healthcare providers in order to fully evaluate whether she is able to return to the workplace without presenting a threat to the health and safety of herself or her coworkers." (ECF No. 88-4 at 6.) It concluded that McFarland-Lawson would remain on enforced leave until she provided the "necessary medical release form" or submitted "to a mental health evaluation." (*Id.*)

> In comparison, McFarland-Lawson's EEO complaint alleges that she
>
> > was subject to discriminatory harassment based upon [her] disability (Mental), race (African-American), sex (Female) and reprisal when:
> >
> > > 2. On April 4, 2013, [she] learned that [she] needed to "authorize an extension of an independent medical examination and review of [her] medical files, thus delaying a determination of when [she] would be allowed to return to work.

(ECF No. 88-19 at 2.) In its decision denying her complaint, HUD concluded that McFarland-Lawson had not suffered "adverse treatment" because "there was no delay in the determination if [she] would be allowed to return to work or not, as the investigation revealed, she was given two options, obtain an independent medical examination or submit other suitable medical evidence from her own medical advisors." (*Id.* at 15.) It similarly concluded that she had not been subject to a hostile work environment because "there was no delay in the determination if [she] would be

allowed to return to work or not, as the investigation revealed, she was given two options, obtain an independent medical examination or submit other suitable medical evidence from her own medical advisors." (*Id.* at 19.)

Thus, HUD's decision to have McFarland-Lawson remain on enforced leave until she either signed a medical release form or submitted to an independent medical evaluation was both the basis for her complaint and was central to HUD's decision to deny her complaint. HUD's decision to have McFarland-Lawson remain on enforced leave until she either signed a medical release form or submitted to an independent medical evaluation was, in other words, the employment action underlying both McFarland-Lawson's EEO complaint as well as the union grievance.

That the grievance and McFarland-Lawson's EEO complaint were both based on the same underlying employment action suggests that they raised the same matter. But McFarland-Lawson's complaint asserted different claims than the grievance. For example, McFarland-Lawson's complaint raised a claim relating to her disability. (ECF No. 88-19 at 12-14.) The grievance did not. Likewise, her complaint also claimed that she had been subjected to a hostile work environment. (*Id.* at 19-21.) The grievance contained no such claim.

In *Facha v. Cisneros*, 914 F. Supp. 1142, (E.D. Pa.), as amended on reconsideration (Mar. 6, 1996), aff'd, 106 F.3d 384 (3d Cir. 1996) the EEO complaint and grievance at

issue were similar to the complaint and grievance at issue in this case: the EEO complaint included a claim of hostile work environment but the grievance did not. *Facha*, 914 F. Supp. at 1149. Specifically, the EEO complaint alleged that "the office has harassed and made the work environment difficult for women" and described two incidents where the former employee's "superiors allegedly made derogatory comments to two female office workers regarding their sex." *Id.* The grievance did not include similar allegations. The court reasoned that, because the grievance did not raise a claim of "comments that created a sexually-charged hostile work environment," the EEO complaint and the grievance did not, on that basis, concern the "same matter." *Id.* Several other courts, including the Courts of Appeals for the Ninth and District of Columbia Circuits, have found *Facha*'s reasoning instructive, even in reaching opposite conclusions. *See, e.g.*, *Heimrich v. Dep't of the Army*, 947 F.3d 574, 578 (9th Cir. 2020); *Guerra*, 176 F.3d at 549.

In addition, McFarland-Lawson's complaint sought different relief than that sought in the grievance. The grievance asked that McFarland-Lawson "be allowed to return to work immediately or be advised about a future date certain and be reimbursed for medical examination costs." (ECF No. 88-2 at 3.) Her complaint sought a wider range of relief, including that:

- [HUD Management] be reprimanded and suspended for 30 days;

- [HUD Management] be trained on how to properly address the situation being experienced by [her];

- she immediately be allowed to return to work;

- a statement, approved by [her], be circulated that declares that [she] was exonerated concerning the alleged threats that [she] made;

- she receive three times the back-pay she is owed from December 2012 to the present;

- she receive three times the back pay she owed for sick leave and annual leave commencing from December 2012;

- she be transferred to a HUD Texas office and HUD's expense;

- HUD pay for the retraining of her service dog;

- she be removed from the PIP she is on and that any record of the PIP be expunged from her file and

- she [be] provided with $80,000 by HUD.

(ECF No. 88-23 at 6.)

In deciding whether a grievance and an EEO complaint concerned the same matter, the District Court for the Northern District of Illinois compared the relief sought in the grievance to the relief sought in the EEO complaint. *Bobeck*, 1996 WL 89111, at *7-8. Noting the differences between the two, the court concluded that the grievance and the EEO complaint did not concern the same matter. *Id*. Applying that reasoning here—where the grievance and McFarland-Lawson's complaint sought different relief—suggests that the grievance and her complaint did *not* concern the same matter.

In all, the grievance and McFarland-Lawson's complaint are based on the same underlying employment action. At the same time, the claims raised and the relief

sought differ, suggesting that the grievance and her complaint did not concern the same matter.

The Secretary's Statement of Facts assumes without going further that McFarland-Lawson's complaint "included a claim on the same matter as her grievance." (*See* ECF No. 172, ¶ 172.) And the Secretary's reply does not respond to McFarland-Lawson's argument that she pursued different claims in her complaint than were pursued in the grievance. (*See* ECF No. 200.) Moreover, the grievance itself lacks detail: aside from the grievance's general allegation that McFarland-Lawson was "harmed," it is unclear what claims may underlie it. (*See* ECF No. 88-2.) Without more, the court cannot determine as a matter of law whether the grievance and McFarland-Lawson's EEO complaint concerned the same matter.

Because the court cannot determine whether the grievance and the complaint concerned the same matter, it cannot say that McFarland-Lawson was required to pursue her claims through each step of the union grievance procedure before she could file an action in federal court. Put differently, the court at this stage cannot determine whether McFarland-Lawson failed to exhaust her remedies before filing this action.

Therefore, the Secretary's motion for summary judgment is denied.

**IT IS THEREFORE ORDERED** that the defendant's motion for summary judgment (ECF No. 170) is denied.

IT IS FURTHER ORDERED that the plaintiff's motion to accept her late response (ECF No. 193) is dismissed as moot. The clerk's office will contact the parties to set up a telephonic scheduling conference to discuss next steps.

Dated at Milwaukee, Wisconsin this 1st day of August, 2022.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge