UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAMESETTA MCFARLAND-LAWSON,

                Plaintiff,

      v.                                                Case No. 16-CV-685

MARCIA FUDGE,

                Defendant.

## ORDER

Jamesetta McFarland-Lawson was previously employed by the United States Department of Housing and Urban Development (HUD). Although this action began with McFarland-Lawson levying widespread complaints against her former employer, following remand from the Court of Appeals for the Seventh Circuit only a single claim is before this court:

> the second claim listed on the first page of the March 10, 2016, final agency decision denying McFarland-Lawson's second EEOC charge (alleging discrimination when "On April 4, 2013, she learned that she needed to authorize an extension of an independent medical examination and review of her medical files, thus delaying a determination of when she would be allowed to return to work.")

*McFarland-Lawson v. Ammon*, 847 F. App'x 350, 356 (7th Cir. 2021).

The action has been bogged down with discovery disputes for over a year (with an interlude for a motion for summary judgment). Conferences, hearings, and admonitions that the parties meet and attempt to work out various issues have failed to fully resolve their disputes. However, the motion that started this chain of events, McFarland-Lawson's third motion to compel (ECF No. 169), has been mooted by intervening proceedings. The defendant has supplemented aspects of its discovery responses, and the court granted the defendant's oral motion for a protective order regarding additional interrogatories. While the parties seem to have lost count of how many interrogatories McFarland-Lawson has served, it is undisputed that she has served well more—perhaps two or three times more—than the 25 permitted under Fed. R. Civ. P. 33(a)(1). McFarland-Lawson is not permitted any additional interrogatories and, insofar as she argues that any specific interrogatory response was insufficient, she is not entitled to further relief given that she has exceeded the number of permitted interrogatories.

The issue that remains is that of the defendant's privilege log and production of redacted documents. McFarland-Lawson has asked the court to compel the defendant to provide a privilege log that more fully describes the redactions. (ECF No. 222.) The court discussed this issue with the parties during conferences on December 15, 2022, and more completely on February 8, 2023.

The biggest issue with the defendant's privilege log was that it failed to comply with Fed. R. Civ. P. 26(b)(5)(ii). Specifically, it was devoid of any attempt to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." It is impossible to assess from the log the nature of the redactions or the claim of privilege underlying each redaction.

An additional problem with the log is that the defendant frequently cited "Attorney Name" as the applicable privilege justifying a redaction. (ECF No. 222-1 at 1.) Not being familiar with any such privilege, the court inquired of defense counsel as to its nature and basis. Defense counsel confirmed that this reflected precisely what it sounded like—an attorney's name had been redacted from the document. Defense counsel conceded that this was not a proper privilege and attributed the error to having the privilege log prepared by "low level employees" at HUD or law students (and apparently not reviewed by counsel of record). The defendant agreed to un-redact information withheld on the basis of "Attorney Name."

A second frequently cited privilege justifying various redactions was listed simply as "Deliberative." Defense counsel stated that this reflected the deliberative process privilege and explained that the privilege applied because the document related to HUD's internal decision-making regarding McFarland-Lawson's employment. The

defendant cited three cases that he said supported his position that the deliberative process privilege justified the redaction: *United States v. Menominee Tribal Enters.*, No. 07-C-316, 2009 U.S. Dist. LEXIS 28243 (E.D. Wis. Mar. 9, 2009); *Perez v. Mueller*, No. 13-CV-1302, 2016 U.S. Dist. LEXIS 161866 (E.D. Wis. Nov. 22, 2016); *Appleton Papers v. United States EPA*, No. 11-C-318, 2012 U.S. Dist. LEXIS 44625 (E.D. Wis. Mar. 29, 2012).

> The deliberative process privilege protects communications that are part of the decision-making process of a governmental agency. Since frank discussion of legal and policy matters is essential to the decisionmaking process of a governmental agency, communications made prior to and as a part of an agency determination are protected from disclosure. Communications made subsequent to an agency decision are, however, not similarly protected. The deliberative process privilege may be overcome where there is a sufficient showing of a particularized need to outweigh the reasons for confidentiality.

*Menominee Tribal Enters.*, 2009 U.S. Dist. LEXIS 28243, at *2 (quoting *United States v. Farley,* 11 F.3d 1385, 1389 (7th Cir. 1993)).

Superficially, this broad statement of the deliberative process privilege (and similar ones routinely made in other cases, including the cases cited by the defendant) would seem to support the defendant's position. Officials at a government agency—HUD—communicated amongst themselves to make a decision regarding McFarland-Lawson's continued employment.

But immediately after the paragraph quoted above, the court added an important caveat: "Such a privilege should not be applied willy-nilly, however, because presumably any government document could be said to relate to some decision the

government agency makes." *Menominee Tribal Enters.*, 2009 U.S. Dist. LEXIS 28243, at *2-3; *see also Redland Soccer Club v. Dep't of the Army*, 55 F.3d 827, 856 (3d Cir. 1995) ("the deliberative process privilege, like other executive privileges, should be narrowly construed"); *Gomez v. Nashua*, 126 F.R.D. 432, 435 (D.N.H. 1989) ("The scope of the privilege is limited by its underlying purpose and should not be applied where that purpose would not be served."); *Grossman v. Schwarz*, 125 F.R.D. 376, 381 (S.D.N.Y. 1989) ("This theory of privilege is properly applicable only to communications relating to policy formulation at the higher levels of government; it does not operate indiscriminately to shield all decision-making by public officials."). Interpreting the privilege in the manner advocated by the defendant unmoors it from its foundation and takes it far beyond its intended scope.

"[D]eliberative process covers 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *DOI v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 95 S. Ct. 1504, 1516 (1975)). "[T]he ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions." *Sears*, 421 U.S. at 151. "[O]fficials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make

5
Case 2:16-cv-00685-WED   Filed 02/09/23   Page 5 of 9   Document 226

them within the Government." *Klamath*, 532 U.S. at 8-9 (citations and quotation marks omitted).

The privilege originates from the unique administrative and regulatory role that executive branch agencies play. Thus, it applies to pre-decisional deliberative *policy* discussions—the decisions that an agency makes by virtue of its status as an executive branch agency. *Cf. Nat'l Immigrant Justice Ctr. v. United States DOJ*, 953 F.3d 503, 508 (7th Cir. 2020) ("The deliberative process privilege, as its name implies, allows an agency to withhold 'all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be.'") (quoting *Sears*, 421 U.S. at 153). Other decisions—the sorts of decisions that every organization makes—are not shielded from disclosure merely because they were made by an executive branch agency. *See, e.g.*, *Torres v. City Univ. of N.Y.*, 90 Civ. 2278 (CSH), 1992 U.S. Dist. LEXIS 18546, at *24 (S.D.N.Y. Dec. 3, 1992) ("Routine operating decisions cannot be transformed into 'policy formulation at the higher levels of government' simply because they are made at public institutions.").

An employee alleging that a private employer discriminated against her would undoubtedly be entitled to discovery regarding decisionmakers' deliberations relating to an adverse employment action. A government employee is no less entitled to this sort of routine discovery. *See, e.g.*, *Connelly v. Cook Cty. Assessor's Office*, No. 19 CV 7894, 2022 U.S. Dist. LEXIS 225908, at *16-17 (N.D. Ill. Dec. 15, 2022) (rejecting claim of privilege

because "the Assessor's Office was acting in its capacity as an employer — rather than as a governmental body formulating important public policy — when it terminated plaintiff") (citing *Ren Yuan Deng v. N.Y. State Office of Mental Health*, No. 13-CV-6801 (ALC) (RLE), 2015 U.S. Dist. LEXIS 156221, at *3 (S.D.N.Y. Nov. 18, 2015) ("The deliberative process privilege does not apply. Here, the Defendant agency was acting in its capacity as an employer rather than as a governmental body formulating 'important public policy.'"); *Anderson v. Marion Cty. Sheriff's Dep't*, 220 F.R.D. 555, 560 (S.D. Ind. 2004) ("it seems rather obvious to us that the privilege has no place in a Title VII action or in a constitutional claim for discrimination") (quoting *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 330 U.S. App. D.C. 352, 145 F.3d 1422, 1424 (1998)); *Waters v. United States Capitol Police Bd.*, 216 F.R.D. 153, 163 (D.D.C. 2003) ("To extend the deliberative process privilege to a recommendation as to a particular personnel matter extends it beyond its present form to protect from disclosure what would otherwise be evidence relevant to a plaintiff's complaint of discrimination."); *Torres*, 1992 U.S. Dist. LEXIS 18546, at *25 (holding that the deliberative process privilege did not apply to a university's reappointment and tenure decision).

There is no indication or even argument that any of the withheld discovery relates to the formation, implementation, or application of a policy of HUD. Rather, the withheld discovery relates merely to HUD officials' decision-making regarding

McFarland-Lawson's status as an employee. Accordingly, the court rejects the defendant's claim that the deliberative process privilege protects any of the discovery McFarland-Lawson has demanded in this action.

It was also revealed at the February 8, 2023, hearing that the defendant had redacted certain information from discovery but did not record those redactions in the privilege log. Therefore, the defendant shall review all discovery provided to the plaintiff (which apparently exceeds 7,000 pages) and confirm that every redaction made in discovery is properly documented on a privilege log.

Finally, from this point forward, all discovery disclosed by the defendant, whether additional discovery or reproduction of discovery previously provided, shall be Bates stamped. All communications regarding specific documents, whether with the court or between the parties, shall refer to the document by Bates number.

**IT IS THEREFORE ORDERED** that McFarland-Lawson's third motion to compel is **dismissed as moot**.

**IT IS FURTHER ORDERED** that McFarland-Lawson's "Motion to have Defendant's [sic] describe why each document is redacted" (ECF No. 222) is granted as set forth in this order. As to information on documents that was redacted on the basis of "Attorney Name" or the deliberative process privilege, the defendant shall provide McFarland-Lawson with unredacted versions of those documents no later than **March 3, 2023**. Following a review of all discovery it has provided, no later than **March 3, 2023,**

the defendant shall provide McFarland-Lawson with a privilege log identifying every remaining redaction and fully complying with Fed. R. Civ. P. 26(b)(5)(ii).

Dated at Milwaukee, Wisconsin this 9th day of February, 2023.

_William E. Duffin_
WILLIAM E. DUFFIN
U.S. Magistrate Judge