# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JAMESETTA MCFARLAND-LAWSON,

> Plaintiff,

> v.                                      Case No. 16-CV-685

MARCIA FUDGE,

> Defendant.

# DECISION AND ORDER

### 1. Facts and Procedural History

Jamesetta McFarland-Lawson began working for the United States Department of Housing and Urban Development (HUD) in 2002. (ECF No. 1 at 5.) In 2011 she asked for accommodations regarding alleged disabilities—"attention deficit hyperactivity disorder, posttraumatic stress disorder, dyslexia, and fibromyalgia." (ECF No. 1 at 5, 9.) According to McFarland-Lawson, this set off a series of events that eventually led to her termination. She alleges she was discriminated against because of her sex, race, veteran status, and disability. (ECF No. 1.)

On February 6, 2012, McFarland-Lawson complained to HUD's EEO office that HUD was discriminating against her by not providing her with her requested

accommodation—a "quiet area with sun." (ECF Nos. 1-1 at 10; 5-8 at 1-2.) This complaint was designated by HUD as case number HUD-00027-2012.

During a conversation with an EEO investigator on August 14, 2012, McFarland-Lawson said, "I can understand and sympathize why people kill people" (ECF No. 1 at 4, 9), and made a statement about whether she "was the first black woman to go shoot up a whole bunch of white people not all of them just the bad ones" (ECF No. 1 at 11). The investigator took these statements as threats of violence and reported them to HUD, which in turn reported them to the Federal Protective Service (ECF Nos. 1 at 9; 1-1 at 72), which investigated. McFarland-Lawson was placed on leave pending the completion of the investigation. (ECF No. 1 at 6.)

Her leave was initially paid but became unpaid after she refused to sign a medical release or submit to an independent mental health assessment. *McFarland-Lawson v. Ammon*, 847 F. App'x 350, 352 (7th Cir. 2021). This led to a union grievance, which was denied, after which the union did not pursue arbitration. *Id.* at 352-53.

McFarland-Lawson eventually consented to an independent mental health assessment, and HUD approved her to return to work on June 12, 2013. *McFarland-Lawson*, 847 F. App'x at 353. However, she could not report to work as scheduled because she was in jail, having been arrested in relation to a dispute with a neighbor. When she did report to work on June 17, HUD again placed her on leave because of additional safety concerns related to her arrest. *Id.*

HUD concluded that McFarland-Lawson had withheld information regarding her fitness to return to work. (ECF No. 1 at 10.) Specifically, she did not disclose that a court had issued a restraining order against her and had ordered her to surrender her firearms. (ECF No. 1-1 at 73.) When she identified her firearms for the court—"a 12 gauge shotgun and a Dillinger [sic][1]" (ECF No. 88-6 at 7)—she identified firearms different than those she identified to HUD's fitness-for-duty investigator, a discrepancy McFarland-Lawson attributed to her having sold certain firearms and acquiring new ones. (ECF No. 1-1 at 73.)

On July 18, 2013, McFarland-Lawson complained to HUD's EEO office that certain HUD employees had provided her with contradictory information, did not provide her with information she requested, and communicated to her supervisor after stating that their communications would be confidential. (ECF Nos. 1 at 6-7; 5-8 at 3-5.) The same day she filed a second EEO complaint about a HUD employee's "work ethics" for having allegedly disclosed McFarland-Lawson's confidential information and for not giving her the accommodation she requested—a "quiet area with sun." (ECF Nos. 1 at 7-8; 5-8 at 1-2.) These complaints appear to have formed the basis for HUD's EEO case number HUD-00077-2013. (*See* ECF No. 19-1.)

---

[1] As Abbie Hoffman noted in response to the judge continually misidentifying his co-defendant David Dellinger in the fictionalized account of the Chicago Seven: "Dillinger was a bank robber, Derringer is a gun, he's David Dellinger …." *The Trial of the Chicago 7* (Netflix 2020).

She filed a third EEO complaint on July 31, 2013, related to her leave and fitness to return to work. (ECF Nos. 1 at 9-10; 5-5; 5-6.) She sought to amend that complaint on April 15, 2014, to include details regarding discipline she allegedly received relating to accessing her email during her suspension and misusing her position. (ECF Nos. 1 at 10; 5-2.) She also alleged that HUD mishandled a housing discrimination complaint that she made on her own behalf. (ECF No. 1 at 10.) She further complained about the steps HUD was requiring her to undergo before she could be medically cleared to return to work. (ECF No. 1 at 13-14.)

After HUD's EEO office rejected her claims of discrimination regarding case number HUD-00027-2012, McFarland-Lawson appealed to the EEOC. A multi-day hearing was held before an ALJ in the spring of 2014. (ECF No. 1-1 at 2.)

HUD terminated McFarland-Lawson on April 18, 2014. (ECF No. 19-2 at 2.) On May 20, 2015, an administrative law judge found that McFarland-Lawson was eligible for unemployment benefits. (ECF No. 1-1 at 72-73.) McFarland-Lawson challenged her termination through the Merit Systems Protection Board, and that process culminated in a settlement agreement between HUD and McFarland-Lawson on September 28, 2015. (ECF No. 19-2.)

McFarland-Lawson filed another EEO complaint on November 17, 2014, in which she complained about a HUD employee disclosing medical information in conjunction

with an unemployment hearing. (ECF Nos. 1 at 15; 5-4.) She amended that complaint on December 10, 2014. (ECF No. 1 at 15.)

On March 10, 2016, HUD's Director of the Office of Departmental Equal Employment Opportunity rejected McFarland-Lawson's claims of discrimination regarding case number HUD-00077-2013. (ECF Nos. 5-3; 19-1.) McFarland-Lawson appealed to the EEOC on April 13, 2016. (ECF No. 19-4 at 3-4.)

On May 9, 2016, the ALJ concluded that, with respect to case number HUD-00027-2012, HUD had failed to provide McFarland-Lawson with an effective reasonable accommodation and had subjected her to a hostile work environment. (ECF No. 1-1 at 62.) The ALJ awarded McFarland-Lawson $50,000. (ECF No. 1-1 at 65.) On June 29, 2016, HUD agreed to accept the ALJ's decision. (ECF No. 19-3.)

McFarland-Lawson filed this suit on June 8, 2016, stating that this suit picks up where the complaints resolved by the ALJ (case number HUD-00027-2012) left off. (ECF No. 1 at 6.) Judge Pepper on December 19, 2016, ordered McFarland-Lawson to supplement her complaint. (ECF No. 4.) Judge Pepper noted that it appeared that McFarland-Lawson had filed her suit before the EEOC process was complete (ECF No. 4 at 2-3, 7), and it was unclear if she had presented all the claims in her lawsuit to the EEOC (ECF No. 4 at 4).

McFarland-Lawson responded to Judge Pepper's order with various documents. (ECF Nos. 5; 5-1; 5-2; 5-3; 5-4; 5-5; 5-6; 5-7; 5-8.)

5

Judge Pepper denied McFarland-Lawson's motion to proceed without prepaying the filing fee and denied without prejudice her motion for the "appointment" of counsel. (ECF No. 7.) Nonetheless, Judge Pepper concluded that McFarland-Lawson had met the low threshold to allege a claim of discrimination. Judge Pepper dismissed as defendants all persons and entities other than the Acting Secretary of the Department of Housing and Urban Development.[2] (ECF No. 7.)

McFarland-Lawson requested additional time to respond to Judge Pepper's "letter." (ECF No. 8.) Judge Pepper noted that there was nothing for McFarland-Lawson to respond to and therefore no basis for any extension of time. (ECF No. 9.) McFarland-Lawson then filed a "Response" to Judge Pepper. (ECF No. 14.)

Following the appearance by counsel for the Secretary (ECF No. 10) and all parties consenting to the full jurisdiction of a magistrate judge (ECF Nos. 6; 15), this action was reassigned to the Honorable David E. Jones. The Secretary moved to dismiss McFarland-Lawson's complaint on May 23, 2017. (ECF No. 17.) After two extensions of time (ECF Nos. 21; 24), McFarland-Lawson responded to the defendant's motion (ECF No. 30) and sought to amend her complaint (ECF No. 31).

---

[2] The proper defendant in this action is the Secretary of Housing and Urban Development. (ECF No. 7 at 6.) During the pendency of this case, five different persons (including Acting Secretaries) have filled this position, and each successor was automatically substituted as the defendant. Fed. R. Civ. P. 25(d). This has made difficult the use of gendered pronouns in recounting the history of this action. In referring to the Secretary, the court has attempted to use the pronoun appropriate to the incumbent at the specific time referenced.

At around this time the docket became cluttered with frivolous filings from a person with no relationship to this case and a history of vexatious attempts to intervene in cases involving the federal government. (ECF Nos. 27; 28; 29; 32; 33; 34; 36; 37; 38; 39; 40; 42; 49; 50; 52.) Judge Jones denied the motion to intervene on October 25, 2017, (ECF No. 41) and subsequently barred the intervenor from filing any further documents in this district (ECF Nos. 51; 53).

The Secretary responded to McFarland-Lawson's request to file an amended complaint, noting that it was not clear that she intended to proceed only on the claims raised in case number 00077-2013. (ECF No. 55 at 2.) The Secretary argued that the complaint lacked sufficient facts and moved that the original complaint and the proposed amended complaint be dismissed. (ECF No. 55.)

McFarland-Lawson sought an extension of time to respond (ECF No. 57), which the court granted. (ECF No. 58.) On January 30, 2018, McFarland-Lawson filed another proposed amended complaint and a response. (ECF No. 59, 60.) However, she failed to sign her proposed amended complaint. Nonetheless, Judge Jones allowed the case to proceed and instructed McFarland-Lawson to submit the completed signature page of her amended complaint by the time of the pretrial conference. (ECF No. 62.)

The Secretary requested an extension of time to file an answer (ECF No. 64), which Judge Jones granted on March 27, 2018 (ECF No. 67), only to have McFarland-Lawson file an angry opposition to the Secretary's request the following day (ECF No. 68).

On April 10, 2018, Judge Jones held a pretrial scheduling conference pursuant to Rule 16. (ECF No. 72.) The Secretary answered the second amended complaint on April 20, 2018. (ECF No. 74.) On June 12, 2018, McFarland-Lawson filed another proposed amended complaint (ECF No. 77), which Judge Jones ordered the Clerk to strike (ECF No. 82 at 1); the Clerk failed to do so.

Also on June 12, 2018, McFarland-Lawson filed what she captioned, "Motion to adhere to the dates in Plaintiff's complaint." (ECF No. 78.) She complained that Judge Jones asked her if September 1, 2012, was the correct date for discovery. (ECF No. 78.) She answered that it was, but later realized that it should be August 1, 2012. (ECF No. 78.) At McFarland-Lawson's request, Judge Jones scheduled a status conference to discuss this issue with the parties, but McFarland-Lawson failed to appear. (ECF No. 76.) In a subsequent filing, she argued that the Secretary needed to amend his answer to address issues that occurred in August 2012. (ECF No. 78 at 1.)

The Secretary responded to McFarland-Lawson's motion and opposed her request. (ECF No. 80.) On June 29, 2018, Judge Jones granted McFarland-Lawson's request to allow discovery going back to August 2012 but otherwise denied her motion. (ECF No. 82.)

On July 6, 2018, McFarland-Lawson filed her first motion to compel. (ECF No. 83.)

On July 23, 2018, the Secretary filed a motion to dismiss for lack of jurisdiction. (ECF Nos. 86; 87.)

8

On July 26, 2018, Judge Jones held a telephonic hearing regarding McFarland-Lawson's motion to compel during which he denied the motion as moot and stayed all discovery other than discovery related to certain emails until the resolution of the motion to dismiss. (ECF No. 90.)

McFarland-Lawson requested additional time to respond to the motion to dismiss (ECF No. 92), which the Secretary did not oppose (ECF No. 93). The court gave McFarland-Lawson until September 3, 2018, to respond. (ECF No. 94.) She submitted her response on September 6, 2018 (ECF No. 96), accompanied by another motion for an extension of time (ECF No. 97), which the court granted (ECF No. 98).

The court then granted the Secretary's request for an extension of time to reply (ECF No. 99; 101), and the parties stipulated to a protective order (ECF Nos. 102; 108). The Secretary replied on October 4, 2018. (ECF No. 105.) The court then granted McFarland-Lawson leave to file a sur-reply (ECF Nos. 109; 110), which she filed on November 5, 2018. (ECF No. 111.)

On December 11, 2018, defense counsel informed the court that he had sent McFarland-Lawson all requested emails and did so by way of a USB thumb drive. (ECF No. 112.) This prompted McFarland-Lawson to file a motion asking the court to order the defendant to provide all documents in hard copy. (ECF No. 114.) The same day she filed a second motion to compel (ECF No. 115) and additional discovery requests (ECF No. 116).

Judge Jones held a hearing on the pending motions on March 20, 2019. (ECF No. 117.) He granted the motion to dismiss and dismissed the other motions as moot. (ECF No. 117.)

McFarland-Lawson filed a motion to alter or amend the judgment (ECF Nos. 118; 119), and the Secretary responded (ECF No. 120). Judge Jones issued a written decision on July 17, 2019, memorializing his decision granting the motion to dismiss for lack of jurisdiction. (ECF No. 124.)

McFarland-Lawson appealed. (ECF No. 126.) Judge Jones denied her motion for leave to appeal without prepayment of the filing fee (ECF No. 131). McFarland-Lawson moved for reconsideration of the decision denying her motion to appeal without prepaying the filing fee, and again moved to appeal without prepaying the filing fee (ECF No. 132, 133).

Judge Jones then left the federal judiciary for private practice, and the matter was reassigned to this court. All parties subsequently consented to the full jurisdiction of this court in accordance with 28 U.S.C. § 636(c). (ECF Nos. 157; 158.) McFarland-Lawson filed a third motion for leave to appeal without prepayment of the filing fee. (ECF No. 134.) This court granted that motion on October 30, 2019. (ECF No. 135.)

On May 19, 2020, the court of appeals ordered McFarland-Lawson to supplement the record with the transcript of the hearing at which Judge Jones granted the Secretary's motion to dismiss. (ECF No. 137.) Thus, McFarland-Lawson asked the district court to

certify that her appeal was not frivolous. (ECF No. 139.) On July 27, 2020, the Secretary moved this court to revoke McFarland-Lawson's permission to proceed in forma pauperis and requested 30 days to file a memorandum in support of the motion. (ECF No. 140.) The court granted the Secretary's request, noting that McFarland-Lawson's motion would be held in abeyance pending resolution of the Secretary's motion. (ECF No. 141.)

The Secretary filed his supporting memorandum on August 28, 2020, and sought leave to file instanter. (ECF Nos. 143; 144.) The court granted the motion to file instanter. (ECF No. 146.) The court of appeals then issued a limited remand to permit the court to resolve the Secretary's motion to revoke McFarland-Lawson's in forma pauperis status. (ECF No. 149.) When McFarland-Lawson failed to respond by the September 16, 2020, deadline, the court ordered that she respond to the Secretary's motion no later than October 7, 2020. (ECF No. 150.) The court subsequently granted McFarland-Lawson's request for an extension of time (ECF Nos. 151; 152), and on October 8, 2020, McFarland-Lawson filed a "Motion for Understanding" (ECF No. 153). She stated that she had paid for the transcript of the hearing at which Judge Jones granted the Secretary's motion to dismiss. (ECF No. 153.) Therefore, the following day the court dismissed as moot her motion to certify that her appeal was not frivolous. (ECF No. 154.) But the court reminded her that the defendant's motion to revoke her leave to proceed in forma pauperis remained pending and that her response was due by October 15, 2020. (ECF No. 154.)

McFarland-Lawson failed to timely respond, finally filing a response on October 23, 2020. (ECF No. 155.) The court accepted the untimely filing because it had accepted the defendant's untimely submission. (ECF No. 159.) On November 4, 2020, the court found that McFarland-Lawson had egregiously misrepresented the facts that the court relied on in granting her leave to proceed in forma pauperis by falsely stating that she was not receiving any disability benefits and that she did not own any real estate when, in fact, she received nearly $3,000 per month in disability benefits and owned a home with substantial equity. (ECF No. 159.) Therefore, the court granted the Secretary's motion to revoke McFarland-Lawson's permission to proceed in forma pauperis on appeal. (ECF No. 159.)

The court of appeals on April 19, 2021, reversed in part Judge Jones's decision. (ECF No. 160); *McFarland-Lawson*, 847 F. App'x 350. It held that Judge Jones erred when he treated a failure to exhaust union remedies as a jurisdictional defect and when he went outside the pleadings to resolve a factual dispute regarding McFarland-Lawson's participation in the grievance process. The court concluded:

> For the sake of clarity moving forward, the claim we remand is the second claim listed on the first page of the March 10, 2016, final agency decision denying McFarland-Lawson's second EEOC charge (alleging discrimination when "On April 4, 2013, she learned that she needed to authorize an extension of an independent medical examination and review of her medical files, thus delaying a determination of when she would be allowed to return to work."). Because McFarland-Lawson abandons all other claims on appeal, *see Jones v. Union Pacific R. Co.*, 302 F.3d 735, 741 (7th Cir. 2002), and no other portion of the magistrate judge's decision involved

improper resolution of a factual dispute, we otherwise AFFIRM the dismissal of the complaint.

*McFarland-Lawson*, 847 F. App'x at 356.

Following remand, this court scheduled a telephonic conference. McFarland-Lawson failed to appear. (ECF No. 161.) When she appeared at a rescheduled hearing (ECF No. 163), the court issued a scheduling order, setting September 1, 2021, as the deadline for all discovery and October 1, 2021, as the deadline for dispositive motions. (ECF No. 164.)

On August 23, 2021, McFarland-Lawson moved to extend the discovery deadline (ECF No. 165), which motion the court granted (ECF No. 168). On September 29, 2021, McFarland-Lawson filed her third motion to compel. (ECF No. 169.) When the Secretary did not respond, the court scheduled a telephonic hearing to discuss the motion.

On November 24, 2021, the Secretary moved for summary judgment. (ECF Nos. 170; 171.)

Regarding McFarland-Lawson's third motion to compel, following a hearing the court ordered the Secretary to look for certain notes requested by McFarland-Lawson. (ECF No. 176.)

Shortly thereafter, the Secretary moved to extend the discovery deadline (ECF No. 177), which motion the court granted (ECF No. 178).

On January 14, 2022, McFarland-Lawson filed a "Motion for Understanding" in which she expressed confusion regarding the proceedings and complained about defense

counsel, Judge Jones, and this court. (ECF No. 179.) The court attempted to clear up McFarland-Lawson's confusion (ECF No. 180), but its efforts were unsuccessful, and McFarland-Lawson filed a "2nd Motion for Clarification" (ECF No. 184) in which she seemed to misunderstand what the court of appeals meant with respect to the word "vacated." The court denied the motion, explaining that it "previously provided as much of an explanation that it believes it can provide without crossing the line into providing impermissible legal advice." (ECF No. 185 at 1-2.)

McFarland-Lawson also sought multiple extensions of time to respond to the Secretary's motion for summary judgment (ECF Nos. 181; 183; 186; 189), and on May 18, 2022, she finally responded, albeit a week late (ECF No. 193; 194). The Secretary replied on June 2, 2022. (ECF No. 200.)

On August 1, 2022, the court denied the Secretary's motion for summary judgment. (ECF No. 204); *McFarland-Lawson v. Fudge*, No. 16-CV-685, 2022 U.S. Dist. LEXIS 135874 (E.D. Wis. Aug. 1, 2022).

The Secretary responded to McFarland-Lawson's third motion to compel on October 19, 2022. (ECF Nos. 211; 212.) The court then granted McFarland-Lawson's request to appear in court and reply in person in support of her motion rather than in writing. (ECF No. 217.) Also following McFarland-Lawson's request the court ordered the Secretary to provide her with documents in paper format rather than electronically. (ECF No. 217.)

After cancelling a hearing at McFarland-Lawson's request, the court held a hearing on December 15, 2022. (ECF No. 221.) Discussions at this hearing led to McFarland-Lawson filing a motion to compel production of a complete privilege log. (ECF No. 222.) The court held a subsequent hearing on February 9, 2023. (ECF No. 226.) Based on intervening events and discussions, the court concluded that McFarland-Lawson's third motion to compel was now moot and dismissed it as such. (ECF No. 226.) However, the court found that the Secretary had failed to comply with her obligation to produce a complete privilege log. (ECF No. 226.)

The Secretary subsequently provided McFarland-Lawson with a complete privilege log and, in an attempt to head off any further disputes regarding the few redactions that remained in the discovery, she provided that discovery to the court for an *in camera* review. (ECF Nos. 228-231.) The court held a telephonic conference with the parties on March 20, 2023, and advised the parties that it had reviewed all of the Secretary's redactions and concluded that each was proper. (ECF No. 234.)

When McFarland-Lawson indicated that she wished to file another motion to compel, the court ordered her to do so by no later than March 27, 2023. (ECF No. 234.) On March 23, 2023, McFarland-Lawson filed a motion asking that the court order the defendant to "state what their [sic] defense it [sic] or make the defendants [sic] provide plaintiff with what their [sic] defense is regarding" the claim that the court of appeals remanded. (ECF No. 237.) The court entered an order explaining that the defendant need

not tell a plaintiff specifically how she plans to defend any particular claim. (ECF No. 238.)

On March 24, 2023, McFarland-Lawson filed what she captioned, "Motion for Understanding for Judge Duffin," in which she expressed confusion about her third motion to compel as having been dismissed as moot. (ECF No. 235.) The court addressed this motion in an order stating that, although her motion was improper and there was no basis to compel a court to provide a more detailed explanation for its decision, it would again attempt to help her understand the proceedings. (ECF No. 239.) The court recounted the history relevant to her third motion to compel and reiterated that, if there was anything she regarded as unresolved, she could include it in the fourth motion to compel that she stated she intended to file. (ECF No. 239.)

On March 27, 2023, instead of filing her motion to compel, McFarland-Lawson sought an extension of time. (ECF No. 240.) The court granted her request and ordered her to file any motion to compel by April 10, 2023. (ECF No. 241.)

McFarland-Lawson filed a motion to compel on April 7, 2023 (ECF No. 242) but, as was made clear three days later when she filed another motion for an extension of time (ECF No. 243), that motion to compel was not the only such motion she intended to file.

On April 12, 2023, the court denied her motion to compel because her motion related to the sufficiency of certain interrogatory responses and the court had already found that she had exceeded the allotted number of interrogatories. (ECF No. 244.) As to

16

the remainder of her motion to compel, the court found that McFarland-Lawson had failed to show that she was entitled to any relief. (ECF No. 244.) The court granted her request to file another motion to compel no later than April 26, 2023. (ECF No. 244.)

On April 26, 2023, McFarland-Lawson filed a motion asking that the court extend the deadline for her to file another motion to compel until after she conducted depositions. (ECF No. 245.) The following day the court granted McFarland-Lawson's motion and set a schedule for further proceedings. (ECF No. 246.) The court noted that, although McFarland-Lawson "has repeatedly expressed her desire to bring this case to a conclusion and bemoaned the time the case has taken, she has requested no less than 17 extensions of time. (ECF Nos. 8, 21, 24, 57, 92, 97, 109, 151, 165, 181, 183, 186, 189, 216, 240, 243, 245.)" (ECF No. 246.) Acknowledging McFarland-Lawson's difficulties in light of her pro se status and other circumstances, the court set a schedule that would provide her ample time to complete discovery. The court ordered all discovery to be completed by July 31, 2023, and set September 29, 2023, as the new deadline for filing any dispositive motions. (ECF No. 246.) The court further stated that any motion to compel must be filed before the close of discovery, and because the court had already taken into account McFarland-Lawson's pro se and personal status in setting these deadlines, the deadlines would not be extended absent extraordinary circumstances. (ECF No. 246.)

On May 15, 2023, McFarland-Lawson filed two motions in which she seemed to seek to relitigate issues regarding the defendant's redactions from certain discovery and

the court's *in camera* review of that discovery. (ECF No. 247; 248.) The court denied those motions the following day, reiterating that based on its *in camera* review the Secretary was not withholding anything that McFarland-Lawson was entitled to see. (ECF No. 249.)

On May 30, 2023, the Secretary filed a motion asking the court to reconsider its decision denying her motion for summary judgment. (ECF No. 251.) Alternatively, the Secretary asks that the court dismiss McFarland-Lawson's case as a sanction for her repeated untruthfulness. (ECF No. 251.)

On June 23, 2023, the day her response was due, McFarland-Lawson requested an extension of time. (ECF No. 254.) The court granted the motion and permitted her until July 5, 2023, to respond. (ECF No. 255.) On that date, the court received McFarland-Lawson's response to the Secretary's motion for reconsideration. (ECF No. 256.) The Secretary has replied (ECF No. 258), and the motion for reconsideration is ready for resolution.

### 2. Motion for Reconsideration Standard

A district court may revise any order or decision at any time before the entry of final judgment. Fed. R. Civ. P. 54(b); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) ("every order short of a final decree is subject to reopening at the discretion of the district judge"). But "as a rule courts should be loathe to do so in the

absence of extraordinary circumstances ….'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983)).

Courts, however, are not above making mistakes. While the normal process for correcting the errors of a district court is an appeal, a motion for reconsideration "enables the court to correct its own errors and thus avoid unnecessary appellate procedures." *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012) (discussing Rule 59(e); quoting *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996)).

"In general, 'litigants must fight an uphill battle in order to prevail on a motion for reconsideration.'" *Oliver v. Amazon.com Servs., LLC*, No. 22-CV-149, 2023 U.S. Dist. LEXIS 89609, at *2 (E.D. Wis. May 23, 2023) (quoting *United Air Lines, Inc. v. ALG, Inc.*, 916 F. Supp. 793, 795 (N.D. Ill. 1996)). A "[c]ourt's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 932 (7th Cir. 2018) (quoting *Quaker Alloy Casting Co. v. Gulfco Industries, Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988)). "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (quoting *Keene Corp. v.Int'l Fidelity Ins. Co.*, 561 F. Supp. 656, 665 (N.D. Ill. 1982)). They are not the forum for rehashing rejected arguments or raising arguments that could have been raised before. *See Caisse Nationale de Credit Agricole*, 90 F.3d at 1269; *Bloch v. Frischholz*, 587 F.3d 771, 784 n.9 (7th Cir. 2009) (citing *Brooks v. City of Chicago*, 564 F.3d 830, 833 (7th Cir. 2009)).

### 3. Analysis

McFarland-Lawson had the option of pursuing claims of discrimination against HUD through either the statutory EEO procedures created under the Civil Service Reform Act of 1978 (CSRA), or the grievance procedure set forth in the collective bargaining agreement between HUD and her union. *McFarland-Lawson*, 2022 U.S. Dist. LEXIS 135874, at *11. She could not pursue both paths for the same matter. 5 U.S.C. § 7121(d); *McFarland-Lawson*, 2022 U.S. Dist. LEXIS 135874, at *11 (citing 29 C.F.R. § 1614.301); *see also Carter v. Carson*, 241 F. Supp. 3d 191, 199 (D.D.C. 2017), *aff'd*, 715 F. App'x 16 (D.C. Cir. 2018). Whichever path she pursued first was the one she was stuck with regarding any dispute regarding the same "matter." *Heimrich v. United States Dep't of the Army*, 947 F.3d 574, 578 (9th Cir. 2020) (quoting 5 U.S.C. § 7121(d); citing *Vinieratos v. U.S. Dep't of the Air Force*, 939 F.2d 762, 768 (9th Cir. 1991)).

"Whether a grievance and an EEO complaint raise the same matter is a fact-based inquiry: a grievance and a complaint may raise the same matter if they are based on the same underlying employment action or if they raise the same topics." *McFarland-Lawson*, 2022 U.S. Dist. LEXIS 135874, at *14 (citing *Carter*, 241 F. Supp. 3d at 199; *Rosell v. Wood*, 357 F. Supp. 2d 123, 129-30 (D.D.C. 2004)); *Heimrich*, 947 F.3d at 578 ("'matter' under § 7121(d) refers to the 'underlying action' challenged in the CBA grievance or the EEO complaint) (discussing *Bonner v. Merit Sys. Prot. Bd.*, 781 F.2d 202, 205 (Fed. Cir. 1986)); *Redmon v. Mineta*, 243 F. App'x 920, 924 (6th Cir. 2007) ("'matter' 'refer[s] to the

underlying government action which precipitated the complaint[,]' not the legal theory employed to challenge the government action" (quoting *Giove v. United States DOT,* 178 Fed. Appx. 814, 818 (10th Cir. 2006) (unpublished)); *Rosell,* 357 F. Supp. 2d at 131 (grievance and complaint relate to the same matter if "they are rooted in the same factual nucleus"). "'Matter' … is broader than 'legal theory': it refers to the factual basis of the employee's adverse action." *Heimrich,* 947 F.3d at 580.

In the court's prior decision denying the defendant's motion for summary judgment the court found:

> The employment action underlying the grievance filed on McFarland-Lawson's behalf was HUD's decision to have McFarland-Lawson remain on enforced leave until she either signed a medical release form or submitted to an independent medical evaluation. Indeed, the grievance's subject line reads "continued enforced leave required for employee Jamesetta McFarland after medical examination and adjudication of threat incident by third party." (ECF No. 88-2 at 2.) Likewise, in the decision denying her grievance HUD explained that McFarland-Lawson had "not provided the medical release form necessary for the FOH doctors to talk to her healthcare providers in order to fully evaluate whether she is able to return to the workplace without presenting a threat to the health and safety of herself or her coworkers." (ECF No. 88-4 at 6.) It concluded that McFarland-Lawson would remain on enforced leave until she provided the "necessary medical release form" or submitted "to a mental health evaluation." (*Id.*)

*McFarland-Lawson,* 2022 U.S. Dist. LEXIS 135874, at *14-15.

In comparison, McFarland-Lawson's EEO complaint alleges that she

was subject to discriminatory harassment based upon [her] disability (Mental), race (African-American), sex (Female) and reprisal when:

2. On April 4, 2013, [she] learned that [she] needed to "authorize an extension of an independent medical examination and review of [her] medical files, thus delaying a determination of when [she] would be allowed to return to work.

*McFarland-Lawson*, 2022 U.S. Dist. LEXIS 135874, at *15 (quoting ECF No. 88-19 at 2).

Relying on *Facha v. Cisneros*, 914 F. Supp. 1142, (E.D. Pa.), as amended on reconsideration (Mar. 6, 1996), *aff'd*, 106 F.3d 384 (3d Cir. 1996), the court in its prior decision noted relevant distinctions between the EEO complaint and her grievance. "For example, McFarland-Lawson's complaint raised a claim relating to her disability. (ECF No. 88-19 at 12-14.) The grievance did not. Likewise, her complaint also claimed that she had been subjected to a hostile work environment. (*Id.* at 19-21.) The grievance contained no such claim." *McFarland-Lawson*, 2022 U.S. Dist. LEXIS 135874, at *17. "In addition, McFarland-Lawson's complaint sought different relief than that sought in the grievance." *Id.* at *18 (discussing *Bobeck v. HHS*, No. 95 C 4778, 1996 U.S. Dist. LEXIS 2236 (N.D. Ill. Feb. 21, 1996)).

Ultimately, the court concluded that the Secretary had failed to show that the complaint and the grievance related to the same matter. *McFarland-Lawson*, 2022 U.S. Dist. LEXIS 135874, at *20. Therefore, it denied the Secretary's motion for summary judgment. *Id.* at *20.

### 3.1. Waiver

The court rejects the Secretary's argument that, by not raising it before the court of appeals, McFarland-Lawson's waived any dispute that her grievance and EEO complaint

were not the same matter. (*See* ECF No. 252 at 5-6.) That is an argument that the Secretary could have, and therefore should have, made in support of her initial motion for summary judgment. Having failed to raise it then it is too late to raise it for the first time in a motion for reconsideration.

Moreover, the Secretary has not shown that the "same matter" question was properly before the court of appeals such that McFarland-Lawson should have addressed it. Notably, the matter was before the court of appeals following a motion to dismiss. As the court of appeals noted, "McFarland-Lawson did not mention the grievance in her pleadings." *McFarland-Lawson*, 847 F. App'x at 355. Without mention of the grievance in the pleadings there would have been no opportunity for the court of appeals to compare the grievance to the EEO complaint and determine whether they related to the same matter under 5 U.S.C. § 7121(d).

### 3.2. Whether the grievance and EEO complaint relate to the same "matter"

In its decision and order denying the Secretary's motion for summary judgment, the court improperly looked to the entirety of McFarland-Lawson's multi-faceted EEO complaint to see if it wholly aligned with her grievance. The court was required to compare the grievance against only the single claim that the court of appeals said remained as part of this action. The Court of Appeals for the Seventh Circuit was clear that its remand was narrow. It said:

> the claim we remand is the second claim listed on the first page of the March 10, 2016, final agency decision denying McFarland-Lawson's second EEOC

charge (alleging discrimination when "On April 4, 2013, she learned that she needed to authorize an extension of an independent medical examination and review of her medical files, thus delaying a determination of when she would be allowed to return to work.").

*McFarland-Lawson*, 847 F. App'x at 356.

As to any other claim that might initially have been part of this case, the court of appeals held either that Judge Jones's dismissal was proper or that McFarland-Lawson abandoned the claim on appeal. See *United States v. Husband*, 312 F.3d 247, 250 (7th Cir. 2002) ("[A]ny issue that could have been but was not raised on appeal is waived and thus not remanded."). "[P]arties cannot use the accident of remand as an opportunity to reopen waived issues." *United States v. Morris*, 259 F.3d 894, 898 (7th Cir. 2001); *see also Sullivan v. Flora, Inc.*, 63 F.4th 1130, 1137 (7th Cir. 2023). Likewise, this court is powerless to expand the scope of the court of appeals' remand or otherwise disregard its decision. *See United States v. Polland*, 56 F.3d 776, 777 (7th Cir. 1995); *Orlando Residence Ltd. v. GP Credit Co., LLC*, 609 F. Supp. 2d 813, 815 (E.D. Wis. 2009) (citing *Waid v. Merrill Area Public Schools*, 130 F.3d 1268, 1272 (7th Cir. 1997)).

Comparing the union grievance with the single claim that the court of appeals said remained on remand, they both clearly raise the same matter—HUD's insistence that McFarland-Lawson needed to either sign a medical release or submit to an independent medical evaluation before she could return to work. *Cf., e.g., Redmon*, 243 F. App'x at 925 ("It is clear that both Redmon's union grievance and EEO complaint dealt with the same adverse employment actions or 'underlying government action' -- to wit, her suspension,

removal from the control room, and obligation to train, certify, and maintain operational currency in another area of specialization."); *Smith v. Jackson*, 539 F. Supp. 2d 116, 131 (D.D.C. 2008) (finding that grievance and EEO complaint related to same matter because both addressed plaintiff's "revocation of his CWS and his AWOL charge"). That she expressed different legal theories in each forum to challenge that underlying action does not change the fact that the actions regard the same matter. McFarland-Lawson had a means of raising her discrimination claims in the grievance process and therefore was required to do so rather than trying to take "two bites at the apple" by pursuing both a grievance and an EEO complaint. *See Heimrich*, 947 F.3d at 581.

Although McFarland-Lawson argues that the defendant "has not shown that I ratified the union's actions" (ECF No. 256 at 6), the court already found that McFarland-Lawson "at least implicitly authorized the filing of the union grievance." *McFarland-Lawson*, 2022 U.S. Dist. LEXIS 135874, at *13. The union president testified that McFarland-Lawson was aware of the grievance, that she provided the president with documents to support the grievance, that the two of them met on multiple occasions to discuss the grievance, that McFarland-Lawson met with HUD management to discuss the grievance, and that she approved HUD's request for more time to respond. *Id.* (citing ECF No. 172, ¶¶ 13-14, 16, 18, 19). All of these facts were deemed admitted when McFarland-Lawson failed to properly dispute them. *Id.* at *2 (citing Fed. R. Civ. P. 56(c)(1); Civ. L.R. 56(2)(B); ECF No. 197.)

Implicit authorization, or even merely the absence of an affirmative disavowal, is all that is required for an employee to be bound by the election of the grievance procedure. *McFarland-Lawson,* 2022 U.S. Dist. LEXIS 135874, at *12 (quoting *Kendrick v. Dep't of Veterans Affairs* , 74 M.S.P.R. 178, 181 (M.S.P.B. March 31, 1997); citing *Baldwin v. Merit Sys. Prot. Bd.,* 806 F. App'x 992, 995 (Fed. Cir. 2020)).

McFarland-Lawson argues that the defendant is nonetheless barred from asserting that her EEO claim is the same matter under 5 U.S.C. § 7121(d) because the defendant did not raise that as an affirmative defense in her answer. (ECF No. 256 at 4.) But 5 U.S.C. § 7121(d) is, at root, an exhaustion doctrine in that the election of the grievance procedure is material to the viability of a plaintiff's claim only when the union member fails to exhaust her remedies under the grievance procedure. *See, e.g., Rosell,* 357 F. Supp. 2d at 131. By explicitly asserting exhaustion as an affirmative defense in the answer to the amended complaint (ECF No. 74 at 37, ¶ 2), the Secretary adequately pled the affirmative defense encompassed within 5 U.S.C. § 7121(d).

Alternatively, "[t]he court should freely give leave" to amend an answer "when justice so requires." Fed. R. Civ. P. 15(a)(2). This may include amendments even at or after trial. Fed. R. Civ. P. 15(b)(1). If the court were to conclude that the Secretary had not properly pled the defense on which she now relies, McFarland-Lawson has failed to show that it would be inappropriate to permit the defendant to formally or constructively amend her answer to add the affirmative defense.

McFarland-Lawson also argues that the Secretary waived the argument that the EEO complaint and union grievance related to the same matter. (ECF No. 256 at 4, 6.) She notes that, in denying the Secretary's motion for summary judgment, the court said, "And the Secretary's reply does not respond to McFarland-Lawson's argument that she pursued different claims in her complaint than were pursued in the grievance. (*See* ECF No. 200.)" *McFarland-Lawson*, 2022 U.S. Dist. LEXIS 135874, at *20; (ECF No. 256 at 4).

As the court has clarified above, whether McFarland-Lawson's EEO complaint also included different claims than those presented in her grievance was not material. Thus, it is of little surprise or consequence that the defendant did not address in reply that aspect of McFarland-Lawson's response. What was material was whether the single narrow claim remanded by the court of appeals related to the same matter as the grievance. And the Secretary explicitly argued in her initial brief that the remanded claim and the grievance claim related to the same matter. (*See, e.g.*, ECF No. 171 at 2.)

Because McFarland-Lawson elected to pursue a union grievance regarding her claim that she was improperly required "to authorize an extension of an independent medical examination and review of her medical files, thus delaying a determination of when she would be allowed to return to work," she was not permitted to then pursue an EEO claim regarding the same matter. The union did not pursue arbitration after McFarland-Lawson lost the grievance (ECF No. 172, ¶¶ 23-26), and therefore she did not exhaust her administrative remedies. Because McFarland-Lawson failed to exhaust her

administrative remedies and has not shown that her failure should be excused, the Secretary is entitled to summary judgment.

### 4. Sanctions

The Secretary alternatively asks that the court dismiss this action as a sanction for McFarland-Lawson's "false narrative at the Seventh Circuit" (ECF No. 252 at 6) and "dishonest representations to this Court" that "mandated unnecessary litigation" (ECF No. 252 at 7). Although it is unnecessary to consider this alternative argument in light of the court's conclusion that the Secretary is entitled to summary judgment, the court briefly addresses it for the sake of completeness.

The Secretary has offered no authority supporting the notion that a district court may impose sanctions for a litigant's conduct occurring before the court of appeals. In the absence of any authority to the contrary, the court regards McFarland-Lawson's conduct before the court of appeals as solely a matter for that court to address.

Although the Secretary also asserts that McFarland-Lawson engaged in dishonesty before this court, she does not point to any specific examples other than the false statements McFarland-Lawson made regarding her income and assets in conjunction with her motion to appeal without prepayment of the filing fee. The Secretary correctly notes that this court has already found that McFarland-Lawson was untruthful with respect to her motion to appeal without prepayment of the filing fee (*see* ECF No. 159), and such misconduct could merit the sanction of dismissal with prejudice, *Ayoubi v.*

*Dart*, 640 F. App'x 524, 528–29 (7th Cir. 2016) ("a dismissal with prejudice is an appropriate sanction for lying to the court in order to receive a benefit from it, because no one needs to be warned not to lie to the judiciary"); *Thomas v. Gen. Motors Acceptance Corp.*, 288 F.3d 305, 308 (7th Cir. 2002). However, absent evidence of additional dishonesty, the court declines to impose sanctions, much less the most severe sanction of dismissal with prejudice, for conduct that occurred roughly three years ago.

## 5.  Conclusion

Following remand from the court of appeals, only a single claim remained—that HUD discriminated against McFarland-Lawson when it required her "to authorize an extension of an independent medical examination and review of her medical files, thus delaying a determination of when she would be allowed to return to work." *McFarland-Lawson*, 847 F. App'x at 356. That claim relates to the same matter as her prior union grievance. Having initially chosen to address through the grievance process the matter of HUD's requirement that she either sign a medical release or submit to an independent mental health assessment, McFarland-Lawson was barred under 5 U.S.C. § 7121(d) from then shifting courses and pursing an EEO complaint. McFarland-Lawson did not exhaust her claim through the grievance process, and therefore the claim is not properly before this court. The court erred when it denied the Secretary's motion for summary judgment, and therefore the court now grants the Secretary's motion for reconsideration.

**IT IS THEREFORE ORDERED** that the Secretary's motion for reconsideration is **granted** (ECF No. 251) and the Secretary's motion for summary judgment is **granted**. This action is dismissed with prejudice. The Clerk shall enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment (60 days if one of the parties is, for example, the United States, a United States agency, or a United States officer or employee sued in an official capacity). *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 21st day of July, 2023.

_WILLIAM E. DUFFIN_
WILLIAM E. DUFFIN
U.S. Magistrate Judge